## No. 14,939.

## PEOPLE EX REL. LUCKE v. COUNTY COURT OF ADAMS COUNTY ET AL.

(126 P. [2d] 334)

Decided May 11, 1942.   Rehearing denied June 1, 1942.

Mr. J. W. KELLEY, Mr. OVAL A. PHIPPS, for petitioner.

Mr. HOWARD ROEPNACK, Mr. GAIL L. IRELAND, Attorney

General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for respondents.

*En Banc.*    .

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THE matters before us for determination arise on issues joined between petitioner, Bruce James Lucke, and respondents, the County Court of the County of Adams, Honorable Homer G. Preston, judge thereof, and Mary Ellon Barttelbort, in an original proceeding in the Supreme Court to stay and prohibit the further action of the respondent county court in a contempt proceeding directed toward the punishment of petitioner for the violation of its order awarding to the mother the custody of Donald Bruce Lucke, a son of petitioner, by respondent Mary Ellon Barttelbort, his divorced wife.

A chronological statement of the legal proceedings instituted by the parties in the district court of the City and County of Denver and in the county court of Adams county, is necessary to an understanding of the issues to be determined.

Bruce James Lucke, petitioner, instituted an action for divorce in the district court of the City and County of Denver against respondent, Mary Ellon Barttelbort, then his wife; October 7, 1938, an interlocutory decree was entered in that action and temporary custody of the child awarded to plaintiff therein. A final decree granting a divorce to plaintiff was entered April 8, 1939, and by this decree the custody of the child Donald was awarded to plaintiff.

During the period ensuing, after the entry of the final decree, to January 27, 1941, the mother, defendant in the divorce action, alleges that she had the possession and custody of the child by agreement with the father, plaintiff in that action, and that he further agreed to

pay three dollars per week toward the support of the child while it remained in the mother's possession. The father admits that a part of this time he permitted the child to remain in the possession of its mother in Adams county, Colorado, and admits that he made some payments toward the child's support, but alleges he discovered that the money was not being used for the support of the child, that thereafter he paid no money to the mother, but supplied the child's wants and necessities by purchasing directly the things required by it. He contends that he never released the custody or control of the child granted to him under the order entered in the divorce action.

January 27, 1941, the mother filed a petition in the divorce action for change of the custody of the child.

January 30, 1941, the father filed an answer to the mother's petition for modification of the custodial decree, in which he asked that the former order of custody in him be affirmed, that defendant be ordered to deliver the child to him, and that she be enjoined from further interfering with his custody and possession of the child.

February 4, 1941, the district court granted the prayer of the father's petition.

February 5, 1941, the mother filed a petition in dependency in the county court of Adams county, Colorado, and by an ex parte order was awarded the custody of the child.

February 18, 1941, the county court of Adams county issued a contempt citation directed to the father requiring him to appear before said court on the twenty-first day of February, 1941, and show cause why he should not be adjudged in contempt of the court for taking the said child away from the mother and refusing to return him to her and for retaining the custody of said child in violation of the order of court.

February 24, 1941, the petition for an alternative writ of prohibition was filed in this court and an alternative

writ was issued directing the county court of Adams county to show cause why a writ of prohibition should not issue as prayed in said petition, and restraining the respondents from taking further action in the aforesaid cause in the county court pertaining to the dependency of Donald Bruce Lucke until the further order of the court.

March 6, 1941, respondent Barttelbort filed her answer to the writ, and on March 17, respondents county court of Adams county and Homer G. Preston, judge thereof, filed their answer.

■■■■ The issue presented for resolution in this proceeding is whether the district court's jurisdiction to dispose of the custody of the child as between the parties to a divorce proceeding and as ancillary to that proceeding, is suspended by the institution of and during the pendency of a direct proceeding in dependency by the state in the interest of the child in a county court under the statute conferring original jurisdiction in dependency upon county courts.

The original jurisdiction of the district court is derived from article VI, section 1 of the Constitution of the State of Colorado, which is as follows: "The judicial power of the state as to all matters of law and equity, except as in the constitution otherwise provided, shall be vested in the supreme court, district courts, county courts, and such other courts as may be provided by law. In counties and cities and counties having a population exceeding 100,000, exclusive original jurisdiction in cases involving minors and persons whose offenses concern minors may be vested in a separate court now or hereafter established by law."

The constitutional jurisdiction of county courts is derived from article VI, section 23, as follows: "County courts shall be courts of record and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointments of guardians, conservators and administrators, and settlement of their

accounts, and such other civil and criminal jurisdiction as may be conferred by law; Provided, Such courts shall not have jurisdiction in any case where the debt, damage, or claim or value of property involved shall exceed two thousand dollars, except in cases relating to the estates of deceased persons."

The General Assembly has seen fit by legislative enactment to create juvenile courts in counties having a population in excess of 100,000 conferring upon such courts exclusive jurisdiction under the authority granted by the foregoing section. That portion of the legislative act conferring such jurisdiction is section 200, chapter 46, '35 C.S.A., and is as follows: "* * * Such [juvenile] courts shall also, in their respective counties, have exclusive jurisdiction, subject to appeals and writs of error as provided by law, in all cases concerning neglected, dependent or delinquent children or persons who cause, encourage or contribute thereto, and in all cases concerning the adoption, custody or disposition of children and the care and protection of their persons from neglect, cruelty, abuse and proceedings concerning feeble-minded children; provided that in all cases of feeble-minded children under the age of twenty-one years the proceedings in such courts shall be as provided in chapter 105; and, provided, further, that nothing in this article shall be construed to revoke or interfere with the jurisdiction, practice or proceedings as now provided by law in other courts of record in this state, in cases in such courts relating to the custody or disposition of children in divorce cases, or in any probate proceedings or other cause in any way connected with their property rights or guardianships concerning the same, or with the estates of deceased persons, or the administration of property rights of minors or controversies relating thereto in probate or other courts, or the administration of their estates; provided, that the disposition of the custody of children in any divorce case shall not be held to interfere with the jurisdiction

of the juvenile court in cases concerning the dependency of such children under the laws of this state concerning dependent children."

A large part of the business of courts so constituted deals with enforcement of the act relating to dependent and neglected children. Chapter 33, '35 C.S.A. Section 2 of this chapter confers jurisdiction on county courts, as it may under article VI, section 1 of the Colorado Constitution, over cases within the act, in the following language: "The county courts and juvenile courts in the several counties in this state shall have original jurisdiction in all cases coming within the terms of this section and other sections codified from the act of 1907."

The foregoing constitutional and statutory provisions have been set out as necessary to a correct understanding of the issues here involved and to an understanding of the cases relied upon by the parties as determinative of such issues.

*People v. Juvenile Court*, 75 Colo. 493, 226 Pac. 866, is a case involving conflicting jurisdiction of the juvenile court and district court of Denver in which a divorce action involving custody of children was pending. We said: "The result in the present case would be that since the children are accused of dependency in the juvenile court, it can proceed; and when that dependency is denied, it has jurisdiction to try that issue of fact. If it determines that they are dependent, that judgment must be treated like any other judgment, subject to review in the supreme court. It cannot be said that the district court, having acquired jurisdiction over the children cannot be ousted therefrom, because that would be to violate that part of the act which says that juvenile courts shall not be interfered with by reason of any proceeding in a divorce case; and while such a decision seems to conflict with that provision which says that the act shall not interfere with the jurisdiction of other courts of the state relating to the custody or disposition of children, yet it is not necessarily more inconsistent

with it than are our criminal laws which permit the seizure upon a charge of crime or lunacy of a minor, from the custody of the parent to whom the district court has granted it; so here the minor may be seized from the custody of its parent to whom the court has confided it and tried for dependency or delinquency."

It would appear from the foregoing case that if the proceedings in dependency had been instituted in the juvenile court in Denver, it would have jurisdiction to determine the case notwithstanding any preceding or pending divorce action in the district court. Counsel for relator concedes this, but contends that there is a distinction between such a case and the case at bar instituted in a county court acting by virtue of the jurisdiction conferred upon it to hear such cases by virtue of section 2, chapter 33, '35 C.S.A., supra. That statute confers original jurisdiction in all cases within the act on county courts and also on juvenile courts, although juvenile courts already possessed that jurisdiction by virtue of section 200, chapter 46, '35 C.S.A. Conferring, as the statute does, original jurisdiction on both juvenile and county courts in such class of cases, the two courts, in the absence of any other statute, would stand on a basis of equality, so far as their jurisdiction is concerned, under section 2, chapter 33, supra. It is pertinent, therefore, to consider whether this equality is disturbed by the word "exclusive" describing the jurisdiction conferred on juvenile courts by section 200, chapter 46, supra.

It will be observed that this section first provides that the newly created juvenile court shall have coordinate jurisdiction with the district and county courts over certain criminal cases involving minors and their interests. It then provides that such court shall have exclusive jurisdiction "in all cases concerning neglected, dependent or delinquent children, or persons who cause, encourage or contribute thereto, and in all cases concerning the adoption, custody or disposition of children

and the care and protection of their persons from neglect, cruelty, abuse and proceedings concerning feeble-minded children * * *." These words, without any limitation, might be thought sufficiently comprehensive to prevent even the disposition of the custody of children between the parties by the district court in, and as a matter ancillary to, a divorce proceeding. To the end that the creation of juvenile courts might not be thought to have this effect in counties where they are created, the act further provided, "that nothing in this article shall be construed to revoke or interfere with the jurisdiction, practice or proceedings as now provided by law in other courts of record in this state, in cases in such courts relating to the custody or disposition of children in divorce cases, * * *."

A divorce case directly involves only the parties—the husband and wife. Strictly speaking, where there are minor children the court is limited to a determination of the rights of the parties to custody of the children as between themselves. Unless a third party volunteers to assume the custody of such children, the court in a divorce action is not authorized to grant their custody to any person other than to one of the parents, for a judgment can be imposed upon, and binds, only parties to the proceeding. If the court finds both parents unfit, then a direct proceeding under applicable laws in the district or county court in any county other than the City and County of Denver, and in the City and County of Denver a direct proceeding in the juvenile court is a prerequisite to their custody being directly assumed by the state by commitment to the State Home, the institution provided by the state to care for children for which it is directly responsible as parens patriae, or otherwise to some proper person willing to assume their custody, if such shall be found. Where the subject matter of the case itself involves custody of minor children in the City and County of Denver, we have held that an award of custody by the juvenile court suspends any former

custodial orders of the district court in a divorce case, even though the custody is awarded by the juvenile court to the parent who was denied the custody in the divorce action, and denied to the parent to whom it was awarded in the divorce action. We so held in the case of *People v. Juvenile Court, supra.* By this holding we gave effect to the provision of section 200, chapter 46, '35 C.S.A., "that the disposition of the custody of children in any divorce case shall not be held to interfere with the jurisdiction of the juvenile court in cases concerning the dependency of such children *under the laws of this state concerning dependent children.*"

The later case of *Ross v. Ross,* 89 Colo. 536, 5 P. (2d) 246, shows that there is no real inconsistency in the provisions of the statute, as was intimated in *People v. Juvenile Court, supra.* It is also made clearly apparent in *Ross v. Ross, supra,* that the district court, in disposing of the custody of children in a divorce case, and the juvenile court in disposing of their custody in a direct proceeding, are not exercising concurrent, but merely simultaneous jurisdiction over the custody issue. In one instance, custody of children is an incident to the case whose subject matter is the separation of the parties; in the other, custody is the subject matter of the case. The following analogous situation might arise in the trial of a larceny case and a replevin case. A defendant might be acquitted of larceny in the district court because the jury found that he, and not the complaining witness, owned the property which defendant was charged with taking. In the afternoon of the same day in the county court in a replevin action, a jury might find the same property to be that of complaining witness and award it to him. Both courts have jurisdiction to consider and determine the question of ownership of the property and their findings are in conflict. Their jurisdiction over the issue of ownership, there as here, is not exercised concurrently, but simultaneously merely. The exercise of jurisdiction over the issue in one case

by the court does not necessarily prevent the simultaneous exercise of the jurisdiction of another court over the same issue. Jurisdiction is not dependent upon, and cannot be determined by, the fact of findings and judgment being consistent or inconsistent. Jurisdiction is the right to hear the case, making findings, and enter judgment. This right must first exist or there can be no valid findings or judgment.

Jurisdiction of those cases under chapter 33, '35 C.S.A. —the right to hear and determine them—is conferred by these words in section 2 of the chapter: "The County Courts and Juvenile Courts in the several counties in this state shall have *original jurisdiction* in all cases coming within the terms of this section and other sections codified from the act of 1907." In cases similar to the instant case a county court outside of Denver, and the juvenile court in Denver, would have the same jurisdiction, and the orders of a district court as to custody of children in a divorce action would be of no greater controlling effect over the proceedings of the county court than are those of the district court in Denver over the proceedings of the juvenile court of Denver, unless the characterization of the original jurisdiction of the juvenile court as *exclusive* in section 200, chapter 46, supra, gives a greater effect to the proceeding of the juvenile court than are possessed by those of the county court. We are of the opinion that it does not. Section 200 of chapter 46, supra, after conferring exclusive original jurisdiction in such cases on juvenile courts, then merely says in effect, that *such grant* of exclusive original jurisdiction *shall not be construed* to revoke or interfere with the jurisdiction over custody of children exercised by other courts, either county or district, in divorce actions. In other words, said section 200 says, and means, that the statutory grant of jurisdiction to the juvenile court, in and of itself, does not prevent the district court from hearing and determining an issue concerning the custody of children in a divorce action.

(And, of course, where no proceeding is had in the juvenile court, the district court may enforce its custodial order.) The statute does not say, nor mean, that when a proceeding in the juvenile court, that is, *when it exercises jurisdiction under the statutory grant,* that the custody order entered by the juvenile court as a result thereof does not make ineffective or suspend the custody order of the district court in the divorce action. We have held in *People v. Juvenile Court, supra,* that it does suspend it. Neither does any statute, to which our attention has been called, say that the custodial order of a county court in a dependency proceeding does not suspend custodial orders of the district court in divorce proceedings. Of course, the statutory *grant* of original jurisdiction in such cases to county courts by chapter 35, supra, does not and could not in and of itself have such effect.

The reasons assigned in the opinion in *Ross v. Ross, supra,* for permitting orders in proceedings in dependency in the juvenile court to suspend orders awarding custody in a divorce action pending in the district court, were not based on the exclusiveness of the juvenile court's jurisdiction over cases involving the custody of children so much as on the inherently different nature of divorce proceedings only incidentally involving custody, and proceedings in dependency directly involving custody. If the words "Juvenile Court" are omitted, and the words "County Court" substituted, the reasoning of the following portion of the opinion in the Ross case is wholly applicable to the instant case. In that case we said: "The proceedings in the two courts are between different parties. Dependency proceedings are required to be entitled 'the people, in the interest of the child * * * and concerning' a named respondent, S.L. 1923, c. 78, p. 210. Any person residing in the county and 'having knowledge of a child * * * who appears to be a dependent or neglected child,' may institute the proceeding in the juvenile court by filing a

petition. C.L. §604. It is made the duty of the county attorney or the district attorney, when requested by the court, to appear 'in behalf of the petition' in any examination of witnesses, and, upon request of the court or any petitioner, to file petitions and conduct the necessary proceedings. C.L. §606. In a divorce suit, on the other hand, the parties of record are the husband and the wife, the proceedings are conducted by their own attorneys, and the object sought is a judicial separation. While the court may award custody of the children to either parent, or to each alternately, or to a third person, it does so merely as an incident to the divorce suit and regardless of the question of dependency or delinquency. C. L. §5599. The jurisdiction of the divorce court is exercised as between the husband and the wife; that of the juvenile court, 'as between the state, or, so to speak, the child, and the parents of the child.' *State v. McCloskey*, 136 La. 739, 67 So. 813. The two courts may have simultaneous, though not concurrent, jurisdiction concerning the custody of the child. *Id.* But where both courts have made orders concerning such custody, the operation of the order of the divorce court is suspended during the period, and only during the period, that the order of the juvenile court remains in force."

The confusion in this case arises out of the misapprehension as to the meaning and effect of the legislative grant, under constitutional permission, of *exclusive* jurisdiction to the juvenile court in the class of cases specified in the Constitution. By constitutional authority conferred upon the General Assembly, the district courts were permitted to be deprived of their otherwise plenary power to determine causes of the constitutionally specified character by the creation of juvenile courts in certain counties and the vesting of that jurisdiction in them. Section 23 of article VI of the Constitution permits the granting of such jurisdiction over dependency cases to county courts. In the one instance the district court is deprived of its jurisdiction in such dependency

cases by a grant thereof to the juvenile court, but in the other the grant of jurisdiction to county courts still leaves the district court with concurrent jurisdiction if it desires to assume it, over the same class of cases. The word "exclusive" as used in section 200, chapter 46, supra, has no other or greater significance.

In the case at bar the district court of Denver was exercising its jurisdiction to determine a cause in divorce with custody of children but indirectly involved. It was not attempting, and never did attempt, to exercise jurisdiction to hear and determine a case in dependency. Another court, the county court of Adams county, with jurisdiction to hear and determine a dependency action in the interest of the same child, first assumed jurisdiction and did what the district court of Denver had never undertaken to do—awarded the custody of the child in a dependency action. It had a right so to do and by the order of the county court the former order of custody entered by the district court in an action entirely different in character, was suspended.

Rule discharged.

Mr. Justice Knous concurs specially.

Mr. Justice Bakke, Mr. Justice Bock and Mr. Justice Burke dissent.

Mr. Justice Knous specially concurring.

I concur in the result only because I consider the decisions in *People v. Juvenile Court*, 75 Colo. 493, 226 Pac. 866, and *Ross v. Ross*, 89 Colo. 536, 5 P. (2d) 246, controlling in the present case; otherwise I would vote to prohibit further action by the respondent county court in the proceeding.