No. 18,472.

RALPH OSCAR JOHNSON, ET AL. *v.* WILLIAM A. BLACK,
AS JUDGE OF THE DISTRICT COURT, ET AL.

(322 P. [2d] 99)

Decided February 17, 1958.   Rehearing denied March 10, 1958.

Mr. JAMES B. RADETSKY, for complainants.

Mr. PHILIP G. COLLINS, Mr. FRANCIS R. SALAZAR, for respondents.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THIS is an original proceeding wherein complainants, to whom we shall refer as the grandparents, seek a writ of prohibition restraining respondents from taking any further steps in Civil Action No. B-20960, pending in the District Court of the City and County of Denver, being a proceeding in habeas corpus in which respondent, Nancy Lee Julia King (formerly Lobb), to whom we refer as the mother, is petitioner and the grandparents are respondents, and in which proceeding petitioner seeks to free her four-year-old daughter, Pamela Gayl Lobb, to whom we shall refer herein as Pamela, from

the alleged illegal restraint of her liberty being placed upon her by her grandparents.

Complainants are the mother and father of respondent mother, Nancy Lee Julia King, and are the maternal grandparents of Pamela Gayl Lobb.

The complaint in this court alleges that on June 3, 1957, the grandparents filed their petition in the Denver Juvenile Court seeking to adopt Pamela. Consent to the adoption was not obtained from either parent of Pamela; the grandparents proceeding on the theory that the parents had lost their parental rights through abandonment of and failure to support Pamela, and as a consequence their consent was not required. The complaint here alleges that the mother appeared in the adoption action and filed her answer in which she denied having abandoned or failed to support Pamela, alleged unfitness of the grandparents and further alleged that Pamela is a ward of the Superior Court of California and, on August 7, 1956, was removed without authority by the grandparents from California to Colorado; further that the mother prayed that the petition for adoption be denied and that the juvenile court grant custody of Pamela to her; that the adoption matter was set for trial on November 1, 1957, and, though all parties were in court and ready for trial at said time, due to a conflict of settings, the Juvenile Judge was unable to hear the matter on that date and the case was continued for trial at a later date and is still pending and undetermined.

On November 7, 1957, the habeas corpus proceeding was commenced in the district court and a writ issued by respondent, the Honorable William A. Black, Judge, directing the grandparents *forthwith* to bring Pamela before Division One of the District Court. The grandparents and Pamela were brought before the court at 11:00 A.M., November 8, 1957, and the case was then continued until 3:00 P.M. of the same day, at which time the grandparents filed a motion to quash the writ and a motion questioning the district court's jurisdiction, for the

reason that the juvenile court had previously acquired jurisdiction in the adoption proceeding and therefore had exclusive jurisdiction over Pamela. They also filed a motion to dismiss the writ for the reason that Pamela had not been made a party to the habeas corpus action as required by C.R.S. '53, 65-1-2. Hearing on these motions was continued to 10:00 A.M., November 9, at which time the court held that the motions were improper and that the matters set forth therein should be incorporated in the return and answer; thereupon, the grandparents filed their return and answer setting forth the matters contained in the above-mentioned motions and in addition alleged that the mother had voluntarily delivered Pamela to the grandparents who had had custody of Pamela for virtually all of the four years of her life, and that the mother was unfit to have the custody of Pamela. The grandparents prayed that the habeas corpus proceedings be dismissed, or, in the alternative, that the district court grant custody of Pamela to the grandparents. The mother filed her reply to the answer and return and specifically denied the allegations of lack of jurisdiction of the district court. Argument on the jurisdictional questions was had on November 9, 1957, at the close of which Judge Black held that the district court did have jurisdiction, and continued the matter until 10:30 A.M., November 12, 1957, to allow the grandparents time to decide whether they would apply to this court for a writ of prohibition. The petition for prohibition was presented to this court November 13, 1957, at which time an order to show cause was issued.

On November 15, 1957, respondents filed their return here alleging among other things: (a) that on May 10, 1954, the Denver District Court entered a decree of divorce in Civil Action No. A 88768, entitled Nancy Lee Lobb (the mother), by her mother and next friend Violet L. Johnson (one of complainants herein), plaintiff, vs. Robert C. Lobb, defendant, and that as a part of said decree Nancy Lee Lobb, the mother, was awarded

the care, custody and control of Pamela, and that said decree became final November 12, 1954. The mother further alleged that she has never signed any relinquishment of adoption; that the juvenile court has entered no order touching the custody of Pamela; that there has never been any order of dependency of Pamela entered by the juvenile court; that the mother has changed her domicile from Colorado to California, and therefore the Colorado courts have no jurisdiction over Pamela.

In the grandparents' petition for prohibition here, no mention is made of the very important fact, set forth in respondents' answer and not denied, that custody of Pamela had been granted to the mother in 1954, and that at all times since, Pamela has been and now is a ward of the Denver District Court. We now find from the petition for prohibition and the return thereto that issuance of the order to show cause from this court was improvident and the complaint must be dismissed and the writ discharged.

Much of the argument of counsel deals with the assertion that the juvenile court has exclusive jurisdiction of adoption matters and therefore when adoption proceedings are pending in the juvenile court the district court has no jurisdiction to entertain habeas corpus proceedings. We agree that the juvenile court has exclusive jurisdiction over adoption proceedings, but do not agree that such jurisdiction has anything to do with habeas corpus proceedings involving unlawful restraint.

The purpose of adoption proceedings is to change the status of a child and its adoptive parents and to create a new status; a new relationship of parent and child.

"Adoption, in legal contemplation, is the act by which the parties thereto establish the relationship of parent and child between persons not so related by nature, and which, *in many respects, severs the natural relations existing between the child and its parents,* although in a narrower sense it is restricted to the act of the person

taking the child * * *." (Emphasis supplied.) —2 C.J.S., page 367, §1.

The purpose of habeas corpus proceedings is to determine whether a person is unlawfully restrained of his liberty.

"The office of the writ of habeas corpus is to give a person restrained of his liberty an *immediate hearing* so that the legality of his detention may be inquired into and determined." (Emphasis supplied.) —39 C.J.S., page 428, §4.

In *Bowen v. Johnston*, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, the Supreme Court of the United States, speaking through Chief Justice Charles Evans Hughes, said:

"It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."

In *In re Moyer*, 35 Colo. 159, 85 Pac. 190, we said:

"The purpose of proceedings in *habeas corpus* is to determine whether or not the person instituting them is illegally restrained of his liberty * * *."

■ In the divorce action referred to above, one of the important incidental purposes was an adjudication as to the care, custody and control of Pamela. That question was determined by a court of competent jurisdiction by final decree of divorce wherein the custody was awarded to the mother. Pamela is a ward of the district court and that court has continuing jurisdiction over her custody, with the power, under proper circumstances, to modify the custody award in the best interest of the child. We have so held in numerous decisions and adhere thereto. *McMillin v. McMillin*, 114 Colo. 247, 158 P. (2d) 444; *Evans v. Evans*, 136 Colo. 6, 314 P. (2d) 291.

■ One of the legal effects of an adoption is to divest the natural parents of their custodial rights and to grant such rights to the adoptive parents. This change of custody follows as a natural consequence of a valid adoption decree. If, for lack of jurisdiction or failure to meet

statutory requirements or for other reasons, the effort to adopt fails, the juvenile court has no power, in such proceedings, to make an award of custody, nor to determine the relative rights of natural parents or of persons seeking to adopt a child. As applied to the situation before us, the juvenile court, in the present state of the record, has no power to decide the question of Pamela's custody. This is the very question to be determined in the habeas corpus proceeding.

Counsel for petitioners urge that only the juvenile court can determine the issue of abandonment. The question of abandonment is one of the elements involved in the *adoption proceedings,* but that does not change the adoption proceedings under C.R.S. '53, 4-1-1, et seq., to an *abandonment proceeding* under C.R.S. '53, 22-1-1, et seq. In the pending adoption proceeding neither parent has consented to the adoption; in lieu of pleading consent, the grandparents pleaded *abandonment* as provided in 4-1-6(b). In order to obtain a decree of adoption, proof of abandonment is essential; however, such proof does not assure adoption for the persons seeking to adopt. They may not qualify as adoptive parents because of lack of proof of financial ability; lack of moral qualities, or numerous other deficiencies.

Clearly, there is ample remedy if Pamela is neglected and abandoned. That remedy does not rest in the habeas corpus proceedings, or even in the district court, as pointed out above; nor in the adoption proceedings. It does rest in the exclusive jurisdiction of the juvenile court (county courts outside of Denver), as provided for in C.R.S. '53, 22-1-1, et seq., which provides for proceedings in the name of the State for the protection of the child and in which proceedings the claims of the warring contestants must give way to the welfare of the child.

In *Everett v. Barry,* 127 Colo. 34, 252 P. (2d) 826, this court said:

"\* \* \* That the jurisdiction so given (to the juvenile court) does not include jurisdiction of contests over custody of children in behalf of, or between, individuals, whether parents, or otherwise; \* \* \* That in a dependency proceeding, such as that before us, the question to be resolved is not the comparative rights of different claimants of custody, but solely that of whether or not the existing custody and surroundings of the child are such that it is the duty of the state, as parens patriae, to take over its custody and make it a ward of the state; \* \* \*."

■ Turning now to the jurisdiction of the district court. It is admitted that in a divorce proceeding in the district court the mother was awarded custody of Pamela. The decree awarding custody to the mother is final and has not been modified. As a consequence, Pamela is presently a ward of the district court. In the habeas corpus proceedings, the mother claims that the grandparents are unlawfuly restraining Pamela. It is clearly evident that the grandparents can have no present rights to the custody of Pamela other than such rights as may have been granted to them by the mother, and only to the extent that the mother has divested herself of her natural parental rights, and of her custodial rights as granted by the divorce decree. Clearly the district court in the habeas corpus proceedings has jurisdiction to determine whether Pamela is being unlawfully restrained by the grandparents. It is equally clear that such determination cannot in any manner affect the outcome of the adoption proceedings. An adjudication in the habeas corpus proceedings could not be considered as an adjudication of *abandonment* as defined in the *adoption statute* or as used in the *dependent and neglected children statute*, for two reasons: (1) the question of *abandonment* is not an issue; (2) the district court has no jurisdiction over abandonment.

· In *Ross v. Ross,* 89 Colo. 536, 5 P. (2d) 246, the mother had, by divorce decree dated September 28, 1928, been

awarded the custody of a minor child. On June 26, 1929, the child's paternal grandfather filed proceedings in the juvenile court to have the child adjudged neglected and dependent. On July 1, 1929, the child's father intervened in the juvenile court proceedings and joined in the allegations and prayer of the grandfather's petition. On July 23, 1929, prior to determination of the dependency proceedings, the father filed his petition for modification of the divorce decree requesting that custody of the child be awarded to the child's paternal grandparents. The mother moved to dismiss this petition for the reason that pendency of the dependency proceedings, the same being within the exclusive jurisdiction of the juvenile court, ousted the district court of jurisdiction over the custody of the child. The district court overruled this contention and in the *divorce case* entered an order awarding custody to the grandparents. This court affirmed that judgment and said:

* * * The jurisdiction of the divorce court is exercised as between the husband and the wife; that of the juvenile court [in dependency proceedings], 'as between the state, or, so to speak, the child, and the parents of the child.' *State v. McCloskey*, 136 La. 739, 67 So. 813. The two courts may have simultaneous, though not concurrent, jurisdiction concerning the custody of the child. *Id.* But where both courts have made orders concerning such custody, the operation of the order of the divorce court is suspended during the period, and only during the period, that the order of the juvenile court remains in force.

"In the present case the institution of the dependency proceeding in the juvenile court did not deprive the district court of jurisdiction to hear and determine the father's petition. We cannot sustain the contention of counsel for the mother that the district court had no jurisdiction to modify its decree so as to award to the grandparents the custody of Joan."

It will be noted that in the above case, custody was

awarded to the grandparents, who were not parties to the divorce action in which the custodial order was entered and modified.

In the *Ross* case in the juvenile court the only issue was the question of neglect and abandonment. In that proceeding the juvenile court had exclusive jurisdiction to determine the question of abandonment and if it found abandonment to enter a custodial order. In the adoption case in the juvenile court involving Pamela, abandonment is only one of the issues. In many adoption cases it is not an issue. Even though an issue, the juvenile court could not decree abandonment and enter a custodial order thereon. Hence the force of the rule in *Ross v. Ross,* supra, is much more persuasive in this case where adoption rather than dependency proceedings are pending.

It being clear that judgment in the habeas corpus proceeding will in no manner affect the outcome of the adoption proceedings and equally clear that nothing has been determined in the adoption proceedings, we find no present basis for restraining the district court in proceeding with the habeas corpus proceedings.

The rule is discharged.

MR. CHIEF JUSTICE HOLLAND and MR. JUSTICE SUTTON not participating.